(No. 53079.—

WALTER PECKAT CO., Appellant, v. THE REGIONAL TRANSPORTATION AUTHORITY et al., Appellees.

*Opinion filed May 30, 1980.—Rehearing denied July 14, 1980.*

Thomas G. Lyons, Daniel W. Coyne, and Patrick L. Moore of O'Keefe, Ashenden & Lyons, of Chicago, for appellant.

James C. Munson, Howard J. Swibel, G. Christian Kronberg, and Michael D. McDonough, of Kirkland & Ellis, of Chicago (Hopkins, Sutter, Mulroy, Davis & Cromartie, of counsel), for appellee Regional Transportation Authority.

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel, Assistant Attorney General, of Chicago, of counsel), for appellees James B. Zagel *et al.*

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Walter Peckat Co., plaintiff, filed a class action suit in the circuit court of Cook County against the Regional Transportation Authority (RTA), James B. Zagel, Director of Revenue of the State of Illinois, Jerome Consentino, Treasurer of the State of Illinois, and William J. Scott, Attorney General of the State of Illinois. The suit requested that the circuit court declare a tax imposed by the RTA unconstitutional and also requested further equitable

relief. The circuit court dismissed both the original complaint and an amended complaint. We allowed direct appeal to this court pursuant to our Rule 302(b) (73 Ill. 2d R. 302(b)). We affirm.

This litigation questions the constitutionality of differential tax rates imposed on retailers by the RTA pursuant to section 4.03 of the Regional Transportation Authority Act (Public Act 81—2d S.S. 3) (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 704.03(e)), which provides in part:

> "(e) The Board may impose a Regional Transportation Authority Retailers' Occupation Tax upon all persons engaged in the business of selling tangible personal property at retail in the metropolitan region at a rate not to exceed 1 % of the gross receipts from such sales made in the course of such business within the County of Cook and ¼% of the gross receipts from such sales made in the course of such business within the Counties of DuPage, Kane, Lake, McHenry and Will."

The RTA subsequently passed Regional Transportation Authority Ordinance No. 79—201, September 24, 1979 (effective Nov. 1, 1979), which imposed the tax at the maximum rates allowed.

Plaintiff contends that the difference between the rate of tax imposed within Cook County and the rate imposed within the other five counties under the RTA's jurisdiction violates section 2 of article IX of the Illinois Constitution of 1970. That section provides:

> "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable."

Plaintiff does not argue that the classification involved in this case is unreasonable or that the rates imposed are not uniform within the classes. Rather, it contends that the section implicitly requires that the tax rates within the area under the jurisdiction of a taxing authority be uni-

form. It contends that, absent express constitutional authorization like that in sections 6($l$)(2) and 7(6) of article VII of the Illinois Constitution of 1970 for units of local government, the imposition of differential tax rates based on different classes within the jurisdiction of a local taxing authority is unconstitutional without regard to the reasonableness of the classification.

Initially we note the apprehensions of the drafters of the 1970 Constitution that courts might find unintended limitations upon the taxing powers, and their declaration that any restrictions were expressly stated. (*Polich v. Chicago School Finance Authority* (1980), 79 Ill. 2d 188, 196-98; *Hoffman v. Clark* (1977), 69 Ill. 2d 402, 422-23.) The plaintiff's burden in establishing such a restriction therefore is particularly heavy in the absence of express language so providing. It attempts to meet that burden in this instance by arguing that under the Illinois Constitution of 1870 no taxing authority could impose a tax that was not uniform within the area of its authority. It furthermore argues the drafters of the 1970 Constitution carried this restriction forward with only an exception for units of local government. (See Ill. Const. 1970, art. VII, secs. 6($l$)(2), 7(6).) Since the RTA is a special rather than general unit of local government, plaintiff concludes that the instant tax is unconstitutional.

Plaintiff presents a complex argument to support its conclusion, but we need not be concerned with all the facets of its analysis. Regardless of whether its proposed restriction applied to property taxes, we are not convinced that it applied to nonproperty taxes. Although the 1870 Constitution required municipalities to tax property uniformly within their jurisdictions (see Ill. Const. 1870, art. IX, secs. 9, 10), no such limitation was applied to nonproperty taxes. (See G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 416, 420-32 (1969).) The only limitation on occupation,

privilege and franchise taxes found in the 1870 Constitution is that they be "uniform as to the class" upon which they operate. Ill. Const. 1870, art. IX, sec. 1.

Plaintiff nevertheless argues that two decisions of this court, *Banta v. City of Chicago* (1898), 172 Ill. 204, and *Van Driel Drug Store, Inc. v. Mahin* (1970), 47 Ill. 2d 378, indicate that a taxing authority must impose a non-property tax uniformly throughout the area of its jurisdiction. At issue in *Banta* was the validity of a tax on brokers imposed by the city of Chicago. The tax involved imposed a flat licensing fee on all brokers doing business in the city without regard to the volume of business conducted by the broker. The tax did not classify brokers into different groups, and no issue concerning the validity of such a classification was considered by the court. The issues raised by the appellant relevant to our analysis here are, first, whether the legislature could authorize the city to impose a license fee, and, second, whether such a fee must vary according to the volume of the broker's business. In answering the first of these questions the court stated:

> "Section 1 of article 9 of the constitution of 1870 expressly authorizes the General Assembly to tax various occupations, including brokers, the only restriction being the requirement that such tax should be uniform as to the class upon which it operates. The General Assembly delegated to the cities in the State the power to impose such taxation within their respective jurisdictions. Rev. St. c. 24, par. 62, cl. 91. It was competent for the General Assembly to delegate the exercise of such power within the limits of cities and villages to such municipalities. *City of East St. Louis v. Wehrung*, 46 Ill. 392; *Howland v. City of Chicago*, 108 Ill. 496." (*Banta v. City of Chicago* (1898), 172 Ill. 204, 219.)

Plaintiff would interpret this language to mean that a non-property tax must be uniform throughout the area of jurisdiction of the taxing authority. We believe, however, that in the context of that case the language merely means that the General Assembly could delegate to a city the authority to impose a license fee within that city, not outside it. Any such fee, of course, had to be uniform as to the class on which it operated as required by section 1 of article IX of the Constitution of 1870, but there is no indication in the opinion that the tax must be uniform throughout the jurisdiction if there were different classes therein. The question of multiple classes was not raised and was not considered.

The appellants in *Banta* also argued that the restrictions of section 9 of article IX of the 1870 Constitution applied and required the tax to vary according to the volume of the broker's business. The court rejected that argument, however, and held that the only restriction was that the tax had to be uniform as to the class upon which it operated. (*Banta v. City of Chicago* (1898), 172 Ill. 204, 221.) Section 9 of article IX of the 1870 Constitution also contained the distinctive language requiring property taxes imposed by municipalities to be "uniform in respect to persons and property, within the jurisdiction of the body imposing the same." By refusing to apply section 9 to non-property taxes the court implicitly rejected the contention that a local taxing authority could not create classes within its jurisdiction for taxing purposes. Such classifications were only subject to the stricture of section 1 of article IX and that the tax be uniform as to the class subjected to it.

Nor does *Van Driel Drug Store, Inc. v. Mahin* (1970), 47 Ill. 2d 378, support the plaintiff's position. At issue in *Van Driel* was the validity of a statute which authorized counties to impose a service tax at one rate and municipalities to impose it at a different rate. The appellant con-

tended that classifying municipalities and counties as different types of tax entities was unreasonable. The court held, however, that differences between municipalities and counties justify classifying them differently for tax purposes. (47 Ill. 2d 378, 382-83.) In support of its holding the court pointed out that the legislature may classify cities and counties according to population so long as the provisions are uniform within each class and also quoted a passage from *People ex rel. O'Connell v. Chicago & Western Indiana R.R. Co.* (1912), 256 Ill. 388:

> " 'The constitution requires uniformity of taxation in taxing districts, and that is secured by regarding every taxing district as a separate unit,—the county for county taxes, the town for town taxes, the city or village for municipal taxes, the school district for school taxes, and any other district as a like unit.' (256 Ill. at 392.)" (47 Ill. 2d 378, 382.)

Since *Van Driel* involved a nonproperty tax, plaintiff argues that the use of this quotation by the court indicates that a taxing authority may not impose different tax rates for a nonproperty tax on different classes within its jurisdiction. *O'Connell* involved a property tax and the limitations of section 9 of article IX of the Constitution of 1870 applied to the issues in that case. In *Van Driel,* however, the court used the quotation from *O'Connell* only to support the proposition that classifying counties and municipalities differently is reasonable. Whether a taxing authority may make classifications within its jurisdiction for the purpose of imposing a nonproperty tax was not at issue and was not considered.

Thus, we do not find any limitation in the 1870 Constitution upon the ability of taxing authorities to create different classes within their jurisdiction for the purpose of imposing a nonproperty tax. Moreover, the opinion of this court in *Gilligan v. Korzen* (1974), 56 Ill. 2d 387, clearly

indicates that no such restriction applies under the present constitution, even had one existed under the former constitution. At issue in *Gilligan* was the validity of a privilege tax imposed by Cook County solely on the unincorporated areas of the county. The plaintiffs argued that this tax violated section 2 of article IX of the Constitution of 1970. The county contended that the tax was a special service tax authorized by section 6(*l*) of article VII of the 1970 Constitution, but the court rejected that argument because the ordinance which imposed the tax did not mention providing any special services to the area taxed. The court nevertheless upheld the ordinance because the county had the power to impose taxes and the classification based on residence within or outside of a municipality was a reasonable one. The court found the distinction reasonable because a county provides many services to unincorporated areas that municipalities provide within their municipal boundaries.

Although the plaintiff in *Gilligan* apparently did not expressly argue that a local taxing authority does not have the authority to create different classes within its jurisdiction for the purpose of imposing a nonproperty tax, we believe that the reasoning of the court implicitly rejects such a contention. Plaintiff in this case argues units of local government have the power to impose taxes on specific subdivisions of their area of jurisdiction only because section 6(*l*)(2) of article VII of the 1970 Constitution authorizes them to impose special service taxes. In *Gilligan,* however, the court found that the tax involved was not a special service tax and nevertheless upheld it, even though it created different classes within the jurisdiction of the authority imposing the tax. The only restriction imposed by the court was that the classification must be reasonable as required by section 2 of article IX of the 1970 Constitution. *Gilligan,* therefore, is completely inconsistent with plaintiff's contention that section 2 of

article IX prohibits a local taxing authority from creating classes within its jurisdiction for the purpose of imposing a nonproperty tax. Plaintiff seeks to avoid the effect of *Gilligan* by arguing that the case was actually based on certain property tax cases under the 1870 Constitution which addressed the problems of local taxing authorities with overlapping jurisdictions. The court did not refer to any of those cases, however, and we find no reason to believe that the court's decision was influenced by them.

Pursuant to section 8 of article VII of the 1970 Constitution, the legislature authorized the RTA to use the classification and to impose the tax involved in this case. Plaintiff does not contend that the classification is unreasonable or that the tax imposed within each class is not uniform, and we find no reason to conclude that it is.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*